IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GARY ROEMER,

      Plaintiff,

v.                                                      Case No. 2:22-cv-00524 JB/GJF

BOARD OF REGENTS OF NEW MEXICO
STATE UNIVERSITY, DAN ARVIZU,
LAURA CASTILLE,
DONALD CONNER, ANNAMARIE DELOVATO,
ROLANDO FLORES, and MATTHEW GOMPPER,
Individually and in their official capacities,

      Defendants.

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S "MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS"**

DEFENDANTS, by and through their counsel of record, hereby submit their Response to plaintiff's "Motion for Partial Judgment on the Pleadings", Doc. 42, filed 2/14/2023 ("Motion"). In support of thereof, Defendants state as follows:

**Introduction**

In 2020, four graduate students at NMSU made complaints to NMSU's Office of Institutional Equity, alleging that Gary Roemer, a professor in the Department of Fish, Wildlife and Conservation Ecology, had subjected them to various forms of sex based discrimination and harassment. During the investigation, NMSU learned that Romer had been engaging in similar behavior towards students and colleagues for years. NMSU filed Title IX complaints against Roemer, and his defense during the associated hearing was basically that he was a relic from a different era where such behavior was more acceptable, and that "you can't teach an old dog new tricks." Through the vehicle of this lawsuit, Roemer has again attempted to ignore the root cause of his termination (sexual discrimination and harassment), and now instead contends that his

termination was orchestrated by the graduate students and various NMSU officials in response to his free speech pertaining to the police shooting of Jacob Blake.

To that end, Roemer has filed his Motion, contending that two NMSU policies are unconstitutionally overbroad, and that one is also void for vagueness. However, as demonstrated below, plaintiff lacks even "barebones" Article III standing to challenge the constitutionality of ARP 3.80, and even if he has standing, ARP is not unconstitutionally overbroad or vague. Similarly, ARP 3.25 is not impermissibly overbroad. Accordingly, Defendants respectfully request the Court deny plaintiff's Motion.

## Argument & Authorities

### A. Standard of Review

Plaintiff's Motion is characterized as one under Fed. R. Civ. P. 12(c), but the standards applicable are those familiar from Rule 12(b)(6), and plaintiff has correctly set forth the standard regarding the Court's obligation to "accept all facts pleaded by the non-moving praty as true and grant all reasonable inferences from the pleadings in favor of the same." *Park University Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006). Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Id. (citing *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000) (citing Fed. R. Civ. P. 12(c))). In deciding a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings pursuant to Rule 12(c), the court may examine any documents referenced in the pleading stating the claim, which are integral and central to the claim, so long as the document is of unquestioned authenticity. *New Memorial Assocs. v. Credit General Ins. Corp.*, 973 F.Supp. 1027, 1029 (D.N.M. 1997) ("[T]he Court may consider documents

referenced in the complaint but not attached to it without converting a motion to dismiss into one for summary judgment. . . . For this exception to Rule 12(b)(6) to apply, the document must be referred to by the complaint and must be integral and central to the plaintiff's claim. . . . The exception encompasses documents quoted, relied upon, or incorporated by reference in the complaint as well as official public records pertinent to the plaintiff's claims, so long as the documents are of unquestioned authenticity.").

### B. Plaintiff Lacks Standing to Assert that ARP 3.80 is Unconstitutionally Overbroad

Plaintiff challenges ARP 3.80 as "unconstitutionally overbroad and vague." Doc. 42 at p. 10. Because plaintiff's challenge is styled as an "overbreadth" claim, it "is not an as-applied[1] challenge; it is a species of facial attack." *United States v. Stevens*, 559 U.S. 460, 473 (2010). An overbreadth challenge argues that a policy is "facially invalid" because it "prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). In the context of an overbreadth challenge the requirements of standing are relaxed, but not eliminated entirely. An overbreadth challenge can be made to assert the rights of third parties if "a [policy} is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court." *Broadrick v. Oklahoma*, 413 U.S. 601, 613. However, the basic requirements of Article III standing still apply. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 754 (5th Cir. 2010).

To demonstrate standing, plaintiff must demonstrate 1) an injury in fact- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; 2) a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result

---

[1] It is not clear whether plaintiff is also asserting an "as applied" challenge to ARP 3.80. *See* Doc. 1 at pp. 31 ("Fourth Cause of Action.") In any event, plaintiff has not raised that issue in his Motion.

of the independent action of some third party not before he court; 3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992), "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

In the present case, plaintiff is unable to establish any of the elements required to demonstrate standing. Although plaintiff's employment with NMSU was terminated, it was not terminated because of an alleged violation of ARP 3.80. Instead, it was terminated because of violations of ARP 3.25. *See* Notice of Allegations and Advisement of Rights, attached hereto as Exhibit 1; Final Decision, attached hereto as Exhibit 2[2]; Notice of Determination, attached hereto as Exhibit 3; Notice of Determination of Appeal and Imposition of Sanctions, attached hereto as Exhibit 4.[3] NMSU was clear in explaining that the complaints against plaintiff were issued pursuant to and investigated pursuant to ARP 3.25, and that his appeals were processed in accordance with ARP 3.25. *See* Exhibit 1 at pp. 1, 2; Exhibit 3 at pp. 2, 4; Exhibit 4 at p. 1. The nature of the allegations that formed the basis for the complaint are all related to discrimination on the basis of race or sex, to which ARP 3.25 applies. *See* Doc. 42-1, at Part 1(A). Conversely, ARP 3.80 specifically **does not apply** to conduct that is based on discrimination. *See* Doc. 42-2, Part 1, Part 2, Part 3 (emphasis supplied). There is simply no evidence to suggest that ARP 3.80 played a substantive role in plaintiff's termination. Any allegation to the contrary is conclusory and

---

[2] The four (4) complaints against plaintiff were administratively separated into two (2) separate cases, and accordingly resulted in two (2) Final Decisions, which are both attached hereto as Exhibit 2. Although the Final Decisions both mention ARP 3.80 once in the summary of the hearing officer's determination, the analysis focuses on the language of ARP 3.25, the Title IVX regulations and case law constructing them. *See* Exhibit 2.

[3] These documents are all referenced in plaintiff's Complaint. *See* Doc. 1 at ¶¶ 42-43; 49-53; 98-99; 102-103; 107.

unsupported by the record evidence. Obviously, because ARP 3.80 was not applied to plaintiff's termination and did not result in a constitutional injury, plaintiff cannot demonstrate the requisite causal link between ARP 3.80 and his termination, or that a finding that ARP 3.80 was unconstitutional would provide him with redress. Indeed, even if ARP 3.80 were declared unconstitutionally overbroad, that finding would do nothing to change plaintiff's termination. Because plaintiff cannot demonstrate even the bare elements of Article III standing in relation to ARP 3.80, his Motion should be denied.

### C. ARP 3.80 is Not Facially Overbroad

Even if plaintiff had standing to bring it, his overbreadth challenge fails on its merits. "The overbreadth doctrine is strong medicine" and overbreadth challenges should be granted "sparingly and only as a last resort." *See Broadrick*, 413 U.S. at 613 (internal quotations omitted). A policy is so overbroad as to be invalid only if "a substantial number of its applications are unconstitutional, judged in relation to the [policy's] plainly legitimate sweep." *Stevens*, 559 U.S. at 473 (internal citations and quotations omitted). Plaintiff must show "a realistic danger that the [policy] itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 762 (5th Cir. 2008). Plaintiff has failed to make these showings regarding ARP 3.80.

Obviously, university professors such as plaintiff do not "leave their First Amendment rights at the campus gates," *Johnson-Kurek v. Abu-Absi*, 423 F.3d 590, 594 (6th Cir. 2005). However, "public universities may restrict their employees' speech in a manner that would be impermissible absent the employment relationship." *Smock v. Bd. of Regents of U. of Michigan*, 353 F. Supp. 3d 651, 659 (E.D. Mich. 2018). "[U]niversities may sanction professors 'whose pedagogical attitudes and teaching methods do not conform to institutional standards.'

" *Id.* (quoting *Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989)). "Although public universities may not force professors to endorse or eschew specific viewpoints, the First Amendment does not bar a public university from requiring that its faculty treat each other and their students with civility." *Id.* at 659-60 (citing *Johnson-Kurek*, 423 F.3d at 596) In this case, plaintiff was terminated after NMSU found that his behavior towards students was sexually discriminatory and harassing. Universities may undoubtedly hold their faculty to more exacting standards of professionalism than the First Amendment would allow for students. *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1190 (6th Cir. 1995) (holding that "the University has a right to hold [a coach] to a higher standard of conduct than his players."). Since university professors enjoy what is in effect a captive audience, students lack recourse to the age-old expedient of walking away from offensive speech. *Bonnell v. Lorenzo*, 241 F.3d 800, 820 (6th Cir. 2001).

ARP 3.80 is directed at misconduct, including bullying, hazing and hostile misconduct; it specifically prohibits only "acts or omissions." *See Arnett v. Kennedy*, 416 U.S. 134, 162 (holding that statutory provision which allowed termination of government employees "for such cause as will promote the efficiency of the service" was not facially overbroad, in part because language was "not directed at speech as such, but at employee behavior."). Notably, plaintiff has not pled any facts showing how ARP 3.80 is overbroad in relation to its legitimate application. Instead, plaintiff's "Third Cause of Action" contains only legal conclusions about the alleged overbreadth of NMSU's policy, with no reference to any specifics. Plaintiff does not identify any constitutionally protected speech that is at risk due to ARP 3.80, nor does plaintiff dispute that the non-exhaustive list of examples of prohibited conduct are acts that have well-established legal definitions and are themselves likely not protected by the First Amendment at all, such as threats,

physical abuse, forced physical activity, theft, etc.[4] Additionally, there is no evidence in the record to suggest that NMSU has interpreted ARP 3.80 in a way that infringes on protected speech. As the Supreme Court has noted, where a "[policy] is not substantially overbroad…whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick*, 413 U.S. at 615-16.[5] In addition, ARP 3.80 is undisputedly viewpoint neutral, and is not aimed at certain groups, facts which weigh against a finding of overbreadth. *See Broadrick*, 413 U.S. 601, 616. Plaintiff has simply failed to demonstrate that ARP 3.80 is impermissibly overbroad, and his Motion should be denied. \

### D. ARP 3.80 is Not Impermissibly Vague

A policy is so vague that it violates the due process clause when it either (1) fails to inform ordinary people what conduct is prohibited, or (2) allows for arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). There is "substantially more room for imprecision in regulations bearing only civil, or employment, consequences, than would be tolerated in a criminal code." *Dade v. Baldwin*, 802 F. App'x 878, 885 (6th Cir. 2020) (citing *Arnett*, 416 U.S. at 159-160). In this context, policies "are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk [of discipline]." *San Fillippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992).

Plaintiff's Complaint alleges that ARP 3.80 "prohibits conduct, verbal or non-verbal, that is committed with the intention of causing emotional distress or other harm" and alleges that this

---

[4] In his Motion, plaintiff suggests that "silence or refusal to speak" would constitute "bullying" or "hostile" conduct under ARP 3.80. However, plaintiff does not explain how this could be, as the language of the ARP is directed at "acts or omissions." In addition, "hostile misconduct" is defined as acts or omissions that are "sufficiently severe, pervasive or persistent so as to unreasonably interfere with or limit a person's ability to participate in academic opportunities or activities." ARP 3.80 Part 2(C). Mere silence or refusal to speak could not conceivably rise to this level.

[5] In *Broadrick*, the regulation at issue was broad enough to prohibit some activity that both sides agreed was protected the First Amendment; however, there was no evidence that the government had applied it in such a way. *Id*.

renders ARP 3.80 impermissibly vague. *See* Doc. 1 at pp. 29-31, "Third Cause of Action." First, as discussed *supra*, plaintiff misinterprets ARP 3.80 as applicable to mere silence. Instead, it is applicable to "acts or omissions." Second, the provision plaintiff references is a definition of bullying set out in ARP 3.80, Part 2, Definitions. As explained in Part 2 (C), the definition of "hostile misconduct" (which is what is actually prohibited by ARP 3.80), states that "Bullying and Hazing are types of conduct which *may constitute Hostile Misconduct* under this Rule." (emphasis supplied). However, the definition of "hostile misconduct" includes a number of other requirements, such as the requirement that such conduct be severe and pervasive standard and "unreasonably" interfere with an individual's school or work activities. In addition, the non-exhaustive list of examples defined as potentially prohibited misconduct provides further guidance and sets forth numerous types of conduct that are well understood by lay persons, and in some instances simply illegal. It is not plausible to suggest that an individual of reasonable intelligence would be unable to determine what conduct was prohibited by ARP 3.80, and plaintiff's arguments in this regard should be rejected.

### E.  ARP is Not Unconstitutionally Overbroad

The above analysis also applies to plaintiff's claims that ARP 3.25 is overly broad. ARP 3.25, Part 3, prohibits sex discrimination and sexual harassment. *See* Doc. 42-1. According to his Motion, plaintiff takes no issue with Part 3(B), but instead claims that Part 3 (C) and (D) are unconstitutionally overbroad. *See Motion* at pp. 7.[6] Plaintiff's arguments fail as a matter of law.

---

[6] Plaintiff's Complaint does not contain a similar level of specificity, and simply alleges that "ARP 3.25 prohibits any conduct, including 'verbal conduct' i.e., speech, that creates a subjectively "offensive" environment for another person. This does not require that the environment be objectively offensive; the mere subjective feelings of a complainant suffice. Yet courts around the country have held that speech cannot be prohibited based exclusively on subjective listener reaction." *See* Doc. 1 at ¶ 131.

Plaintiff's primary complaint regarding ARP 3.25(C) is that it suggests non-verbal conduct can constitute a policy violation, and that a single incident of any type of conduct may constitute a violation of NMSU policy.  Neither provision is unconstitutionally overbroad.  A single act of sexual assault or violence (which could be non-verbal) would plainly and appropriately constitute a violation of NMSU policy. Obviously, plaintiff's employment was not terminated based on a "single incident" but a pattern and practice of sex discrimination and sexual harassment towards students and colleagues.  *See* Exhibits 1-4.   Similarly, the notion that non-verbal conduct that was unwelcome, non-consensual and of a sexual nature could violate NMSU policy is not unconstitutionally unpalatable.   Again, plaintiff himself has suffered no harm from the application of this policy, as his conduct was verbal and, in some instances, physical.  *See* Exhibits 1-4.[7] Plaintiff has not identified any potential instances of free speech that would be stifled by this language.

Plaintiff also argues that Part 3(D) is unconstitutionally overbroad because it states that "conduct of a sexual nature, constitutes a violation of NMSU policy and/or law and policy when…[t]he conduct has the purpose or effect of substantially interfering with an individual's academic or work performance, or creating an intimidating, hostile or offensive environment in which to work or learn." First, plaintiff contends that ARP 3.25 "contains no objective, "reasonable person" standard, nor any requirement of severity or pervasiveness."  Doc. 42 at pp. 8.  This is obviously incorrect.  ARP 3.25 Part 3(B) states that

---

[7] It is unlikely that *verbal* conduct that constitutes sexual discrimination or sexual harassment under ARP 3.25 would be entitled to First Amendment protections in any event.  *See Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019) (professor's use of profanity and discussion of her sex life and the sex lives of her students did not involve a matter of public concern and was not protected by the First Amendment); *Trudeau v. University of North Texas*, 861 Fed. Appx. 604, 609-610 (5th Cir. July 9, 2021) (unpublished) (university instructor's sexual comments to students, including commenting on their sex lives, encouraging nudity in the classroom and commenting on student's mental health as it pertained to sex, were not matters of public concern entitled to First Amendment protections).

> "Sexual harassment under Title IX includes: (1) quid pro quo; (2) "unwelcome conduct" of a sexual nature that a reasonable person would find "so severe, pervasive and objectively offensive" that it effectively denies someone equal access to an education program; or (3) sexual assault, dating violence, domestic violence or stalking."

Doc. 42-1, Part 3(B).  Part 3(D) is applicable to "conduct of a sexual nature" that "constitutes a violation of NMSU policy and or law and policy" and contains enumerated examples of quid pro quo sexual harassment ((D)(1) and (2)) and unwelcome conduct of a sexual nature ((D)(3)). Plaintiff appears to be attempting to suggest that Part 3(D) is not to be read in conjunction with the rest of Part 3 or is somehow intended to create "different" standards than those identified in the rest of Part 3.  This tortured reading is belied by the plain language of Part 3 itself, and plaintiff's attempts to cherry pick certain sentences to read in isolation is unavailing.[8]  The record is devoid of any evidence that ARP 3.25 has been applied to plaintiff or anyone else in a manner such as that suggested by plaintiff.

Plainly, ARP 3.25 Part 3 contains both a "reasonable person" standard and a requirement that sexual harassment be "so severe, pervasive and objectively offensive that it effectively denies someone equal access to an education program."  Additionally, Part 3(D) focuses on whether "conduct of a sexual nature" has the purpose or effect of substantially interfering with an individual's academic or work performance, or creating an intimidating, hostile and offensive environment.  Plaintiff has failed to identify a "substantial amount of constitutionally protected speech" that could be reached by this provision.  *Leondardson v. City of East Lansing*, 896 F.2d 190, 195 (6th Cir. 1990).  Accordingly, plaintiff's Motion must be denied.

---

[8] This is an important distinction between NMSU's policies and that at issue in *DeJohn v. Temple University*, 537 F.3d 301, 305 (3d Cir. 2008), which contained no language like that in Part 3(B).  In addition, a disjunctive reading of Part 3 like the one urged by plaintiff ignores the requirement that the Court determine whether a challenged policy is susceptible to a reasonable limiting construction.  *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 n. 4.

**Conclusion**

For the foregoing reasons, Defendants respectfully request the Court deny plaintiff's Motion, and for such other and further relief as the Court deems appropriate.

> Respectfully submitted,
>
> JARMIE & ROGERS, P.C.
>
> */s/ Cody R. Rogers*
> Cody R. Rogers
> 2540 El Paseo Road, Suite D
> Las Cruces, NM 88001
> Tel. (575) 288-1453
> crogers@jarmielaw.com
> *Attorney for Defendants*

I hereby certify that I served a true and correct copy of the foregoing via this Court's CM/ECF filing and service system on this 14TH day of March 2023, upon all counsel of record.

*/s/ Cody R. Rogers*
Cody R. Rogers
Jarmie & Rogers, P.C.