**NEW MEXICO STATE UNIVERSITY**

**Office of Institutional Equity**

**Buskirk**                                             **CASE NO 2021-094 C**

**v**

**Roemer**

<u>**FINAL DECISION**</u>

**DATE OF DECISION - August 31, 2021**

This matter came before the independent hearing officer on August 17, 2021.  In attendance  at the Title IX Hearing where the Petitioner, Ms. Buskirk, who was represented by her advisor Dr. A. Onsanloo.  Respondent, Dr. Gary Roemer and his advisor Dr. W. Boecklen, were also in attendance.  The hearing was conducted via Zoom and an audio recording and transcript were taken of the proceeding.  Each party was afforded an opportunity to make an opening statement; question and cross examine witnesses through their advisors as well as introduce evidence through documentation and present a closing statement.

Although Dr. Roemer through his advisor did not submit their list of witnesses in a timely fashion they were afforded an opportunity to examine two of the three witnesses identified.  The third witness was determined not to have any information that was relevant to the proceedings and was not allowed to testify.  There was no objection by either of the parties to any of the exhibits identified and although their relevance to the instant matter may be unclear they are all admitted as part of the record proper.

EXHIBIT 2

1 | P a g e

According to the Office of Institutional Equity Standard Operating Process Procedures for Resolving Complaints of Discrimination Part 9 (i) (1) (a)-(g) the hearing officer is to follow the format set forth therein in rendering a decision.

**DETERMINATION**

Upon review of the evidence, including the testimony and documentation, it is the determination of this hearing officer that Dr. Gary Roemer did in fact violate New Mexico State University policy.  Specifically, he violated NMSU Administrative Policy and Rule 3.25 (ARP) and 3.80 (ARP).

**LIST OF ALLEGATIONS**

1.  Whether [Respondent] engaged in a pattern of discriminatory conduct based on sex/gender, in violation of NMSU ARP 3.25, by his physical touching, hugging, placing his arm around her, kissing her on the cheek while telling her he loved her.

2.  Whether Respondent subjected Buskirk to discriminatory conduct by asking her if she had a boyfriend and that she was "hired to work, so she better not get a boyfriend and get distracted from her job".

3.  Whether [Respondent] engaged in a pattern of discriminatory conduct based on sex/gender, in violation of NMSU ARP 3.25, by making comments relating to Buskirk's appearance and gender and in his manner of communications with Buskirk.

4.  Whether Roemer's making comments interpreted as "belittling", "demeaning", including that female co-workers were "charmed" by a male individual; by

referring to graduate and undergraduate students as 'Ladies" or 'cute'; and by stating that it was not part of his "generation" to use preferred pronouns were sexually harassing and discriminatory.

5. Whether [Respondent], acted in a retaliatory manner, in violation of NMSU ARP 3.25, towards Buskirk after he was notified of a report to OIE alleging discriminatory conduct as alleged in the complaint.

**A DESCRIPTION OF THE PROCEDURAL STEPS TAKEN FROM THE RECEIPT OF THE FORMAL COMPLAINT THROUGH DETERMINATION**

NMSU through its office of Institutional Equity received complaints through either a Campus Community Incidence Report or Public Inquiry Reporting forms.  The allegations set forth in the complaints were investigated; Dr. Roemer was advised of the complaints and the content of each complaint and afforded an opportunity to respond to the allegations.  The process utilized by NMSU OIE is compliance with Title IX requirements.  Following the conclusion of the investigation and issuance of a Final Investigative Report the OIE scheduled a hearing and assigned a hearing officer.

FINDINGS OF FACT

1. Dr. Roemer is a professor at New Mexico State University in Las Cruces, New Mexico in the department of Fish, Wildlife and Conservation Ecology, hereinafter "FWCE".

2. At all times relevant the Complainant was enrolled in the department of Fish, Wildlife and Conservation Ecology post graduate programs.

3. As a professor in the Department of FWCE Respondent Roemer held a direct position of authority over the Complainant.

4. Dr. Roemer exercised that authority directly over the complainant who served as a teaching assistant and was a graduate student in his section of the department FWCE.

5. The general consensus of the Department was that Dr. Roemer was difficult to work with and for, according to the Department Chair Dr. W. Gompper.

6. Dr. Roemer admits he did comment on the appearance, and relationship status of female students on more than one occasion.

7. The comments from Dr. Roemer were unsolicited and unwelcome.

8. Dr. Roemer's comments were unsolicited and unwelcome and constitute sexual harassment.

9. Dr. Roemer's response to the allegations was he was not used to functioning in a time where comments made regarding women would be considered inappropriate.

10. Dr. Roemer did interfere with the Complainant Buskirk's ability to complete the work on her graduate degree by insisting he remain a part of her research reporting.  This could have been avoided with a third party intervenor to guarantee the fidelity of the results and the security of the data.

CONCLUSIONS OF LAW

A. Title IX of the Education Amendments of 1972 (Title IX) prohibits discrimination on the basis of sex in education programs and activities receiving Federal financial assistance. Sexual harassment of students can be a form of discrimination prohibited by Title IX[1].

---

[1] Title IX was modeled on Title VI, Cannon v. University of Chicago, 441 U.S. 677, 694 (1979)

B.  NMSU does not discriminate on the basis of age, ancestry, color, disability, gender identity, genetic information, national origin, race, religion, serious medical condition, sex (including pregnancy), sexual orientation, spousal affiliation or protected veteran status in its programs and activities as required by federal and state equal opportunity/affirmative action regulations and laws and NMSU policy and rules. ARP 3.25

C.  It is also consistent with United States Supreme Court precedent and well-established legal principles that have developed under Title IX, as well as under the related anti-discrimination provisions of Title VI and Title VII of the Civil Rights Act of 1964[2].

D.  In order to give rise to a complaint under Title IX, sexual harassment must be sufficiently severe, persistent, or pervasive that it adversely affects a student's education or creates a hostile or abusive educational environment. For a one-time incident to rise to the level of harassment, it must be severe.

E.  Title IX applies to all public and private educational institutions that receive Federal funds, including elementary and secondary schools, school districts, proprietary schools, colleges, and universities.

---

[2] See Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992)(applying Title VII principles in determining that a student was entitled to protection from sexual harassment by a teacher in school under Title IX); Kinman v. Omaha Public School Dist., 94 F.3d 463, 469 (8th Cir. 1996) (applying Title VII principles in determining that a student was entitled to protection from hostile environment sexual harassment by a teacher in school under Title IX); Doe v. Claiborne County, 1996 WL 734583, *19 (6th Cir. December 26, 1996) (holding in a case involving allegations of hostile environment sexual harassment of a student by a teacher that Title VII agency principles apply to sexual harassment cases brought under Title IX);

F.  Title IX protects any "person" from sex discrimination; accordingly both male and female students are protected from sexual harassment engaged in by a school's employees, other students, or third parties.

G.  No employee or student, either in the workplace or in the academic environment, should be subjected to discrimination. Even one incident of misconduct may constitute a violation of policy, rule or procedure.  NMSU expects students, faculty and staff to treat one another and campus visitors with respect.

   Whether an action is discriminatory under law and/or policy will be determined based on the specific facts of each case and the context under which the conduct occurred.

   1.   Some conduct may be inappropriate, unprofessional, and/or subject to disciplinary action, but not fall under the definition of discrimination/sexual harassment/sexual misconduct.

   2.   Action taken will depend on the nature and seriousness of the conduct alleged and proven.  ARP 3.25 Sections H & I

H.  In order to be actionable as harassment, sexual conduct must be unwelcome. Conduct is unwelcome if the student did not request or invite it and "regarded the conduct as undesirable or offensive." Acquiescence in the conduct or the failure to complain does not always mean that the conduct was welcome.

I.  In considering whether an action is unwelcome the nature of the conduct and the relationship of the school employee to the student, including the degree of influence (which could, at least in part, be affected by the student's age),

authority, or control the employee has over the student are parts of the overall review[3].

J.  Title IX and the regulations implementing it prohibit discrimination "on the basis of sex;" they do not restrict sexual harassment to those circumstances in which the harasser only harasses members of the opposite sex in incidents involving either quid pro quo or hostile environment sexual harassment. In order for hostile environment harassment to be actionable under Title IX, it must create a hostile or abusive environment. This can occur when a student or employee harasses a member of the same sex. See, *Kinman,* 94 F.3d at 468 (female student's alleging sexual harassment by female teacher sufficient to raise a claim under Title IX).

K.  To determine if conduct qualifies as "sexual harassment" there are a number of factors that an institution may consider. The elements of severity, pervasiveness, and objective offensiveness must be evaluated in light of the known circumstances and depend on the facts of each situation, but must be determined from the perspective of a ***reasonable person*** standing in the shoes of the complainant.

---

[3] Patricia H., 830 F.Supp. at 1297 ("grave disparity in age and power" between teacher and student contributed to the creation of a hostile environment); Summerfield Schools, OCR Case No. 15-92-1929 ("impact of the ... remarks was heightened by the fact that the coach is an adult in a position of authority"); cf. Doe v. Taylor I.S.D., 15 F.3d 443 (5th Cir. 1994), cert. denied, 115 S.Ct. 70 (1994) (Sec. 1983 case; in finding that a sexual relationship between a high school teacher and a student was unlawful, court considered the influence that the teacher had over the student by virtue of his position of authority).

L.  Sexual harassment under Title IX defines unwelcome conduct as conduct that is so severe, pervasive, and objectively offensive that it denies a person equal educational opportunity is actionable sexual harassment regardless of the respondent's intent to cause harm.

M.  Severity and pervasiveness are necessary elements to ensure that Title IX's nondiscrimination mandate does not punish verbal conduct in a manner that chills and restricts speech and academic freedom.

N.  The actions of Dr. Roemer are sufficiently severe, pervasive and objectively offensive that a reasonable person standing in the shoes of the Complainants would find his actions to be not only harassing but discriminatory and not appropriate in any educational setting.

O.  It is disputed and unclear from the testimony if Dr. Roemer engaged in any unwelcome physical contact with the Complainant Buskirk.

**Sanctions to be imposed on Respondent**

It is the recommendation of this hearing officer that Dr. Roemer be sanctioned for his actions including but not limited to termination of employment with the University. His behavior is not to be tolerated in an educational setting and regardless of his intentions it has served to adversely affect the education of the complaint.

CUDDY & MCCARTHY, LLP

By: */S/ Jacquelyn Archuleta-Staehlin*
    Jacquelyn Archuleta-Staehlin
    Cuddy & McCarthy, LLP
    Post Office Box 4160
    Santa Fe, New Mexico 87502
    JStaehlin@cuddymccarthy.com
    *Independent Hearing Officer*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was sent this 31st

day of August, 2021, via electronic means to the following individual:

**Laura M. Castille, esq.**
**Executive Director, Title IX Coordinator, ADA & AA**
**Office of Institutional Equity**
MSC 3515
New Mexico State University
P.O. Box 30001
Las Cruces, NM 88003-8001
castille@nmsu.edu

*/S/ Jacquelyn Archuleta-Staehlin*
Jacquelyn Archuleta-Staehlin

**NEW MEXICO STATE UNIVERSITY**

**Office of Institutional Equity**

**Schweiger, Salas and McKibben**                    **CASE NO 2021-094 A, B & D**

**v**

**Roemer**

## <u>FINAL DECISION</u>

**DATE OF DECISION - August 31, 2021**

This matter came before the independent hearing officer on August 17, 2021.  In attendance  at the Title IX Hearing where the Petitioners, Ms. Schweiger, Ms. Salas and Ms. McKibben, who were all represented by their advisor Dr. A. Onsanloo. Respondent, Dr. Gary Roemer and his advisor Dr. W. Boecklen, were also in attendance.  The hearing was conducted via Zoom and an audio recording and transcript were taken of the proceeding.  Each party was afforded an opportunity to make an opening statement; question and cross examine witnesses through their advisors as well as introduce evidence through documentation and present a closing statement.

Although Dr. Roemer through his advisor did not submit their list of witnesses in a timely fashion, they were afforded an opportunity to examine two of the three witnesses identified.  The third witness was determined not to have any information that was relevant to the proceedings and was not allowed to testify.  There was no objection

by either of the parties to any of the exhibits identified and although their relevance to the instant matter may be unclear they are all admitted as part of the record proper.

According to the Office of Institutional Equity Standard Operating Process Procedures for Resolving Complaints of Discrimination Part 9 (i) (1) (a)-(g), the hearing officer is to follow the format set forth therein in rendering a decision.

**DETERMINATION**

Upon review of the evidence, including the testimony and documentation, it is the determination of this hearing officer that Dr. Gary Roemer did in fact violate New Mexico State University policy.  Specifically, he violated NMSU Administrative Policy and Rule 3.25 (ARP) and 3.80 (ARP).

**LIST OF ALLEGATIONS**

1. Whether [Respondent] engaged in a pattern of discriminatory conduct based on sex/gender, in violation of NMSU ARP 3.25, by making comments about the female body, attractiveness, appearance, boyfriends and dating.

2. Whether [Respondent] engaged in a pattern of discriminatory conduct based on sex/gender, in violation of NMSU ARP 3.25, by making comments interpreted as "belittling", "demeaning", including that female co-workers were "charmed" by a male individual; by referring to graduate and undergraduate students as "Ladies" or "cute"; and by stating that it was not part of his "generation" to use preferred pronouns.

3. Whether [Respondent], in his graphic description of a sexual assault incident as contained in his email dated August 29, 2020, purposefully

targeted and subjected female graduate students to discriminatory conduct based on sex/gender, in violation of NMSU ARP 3.25.

4. Whether [Respondent], in his emails dated August 28 & 29, 2020, purposefully targeted and subjected graduate students to discriminatory conduct based on race, in violation of NMSU ARP 3.25.

5. Whether Dr. Roemer's public comments during a brown bag lunch presentation by a new graduate student, was inappropriate and sexually harassing.

## A DESCRIPTION OF THE PROCEDURAL STEPS TAKEN FROM THE RECEIPT OF THE FORMAL COMPLAINT THROUGH DETERMINATION

NMSU through its office of Institutional Equity received complaints through either a Campus Community Incidence Report or Public Inquiry Reporting forms.  The allegations set forth in the complaints were investigated; Dr. Roemer was advised of the complaints and the content of each complaint and afforded an opportunity to respond to the allegations.  The process utilized by NMSU OIE is compliance with Title IX requirements.  Following the conclusion of the investigation and issuance of a Final Investigative Report the OIE scheduled a hearing and assigned a hearing officer.

FINDINGS OF FACT

1. Dr. Roemer is a professor at New Mexico State University in Las Cruces, New Mexico in the department of Fish, Wildlife and Conservation Ecology, hereinafter "FWCE".

2. At all times relevant each of the Complainants were enrolled in the department of Fish, Wildlife and Conservation Ecology post graduate programs.

3. As a professor in the Department of FWCE Respondent Roemer held a position of authority over each of the Complainants, either directly or indirectly.

4. Dr. Roemer exercised that authority directly over the complainants who either served as teaching assistants or were specifically in his section of the department FWCE as graduate students.

5. The general consensus of the Department was that Dr. Roemer was difficult to work with and for, according to the Department Chair Dr. W. Gompper.

6. Dr. Roemer admits he did comment on the appearance, smell and body parts, dating and relationship status of female students on more than one occasion.

7. The comments from Dr. Roemer were unsolicited and unwelcome.

8. Dr. Roemer's comment during the brown bag presentation of Ms. Schweiger was not directed towards the content of her presentation, but was unsolicited and unwelcome and is sexual harassment.

9. Dr. Roemer's response to the allegations was he was not used to functioning in a time where comments made regarding women would be considered inappropriate.

CONCLUSIONS OF LAW

A. Title IX of the Education Amendments of 1972 (Title IX) prohibits discrimination on the basis of sex in education programs and activities

receiving Federal financial assistance. Sexual harassment of students can be a form of discrimination prohibited by Title IX[1].

B. NMSU does not discriminate on the basis of age, ancestry, color, disability, gender identity, genetic information, national origin, race, religion, serious medical condition, sex (including pregnancy), sexual orientation, spousal affiliation or protected veteran status in its programs and activities as required by federal and state equal opportunity/affirmative action regulations and laws and NMSU policy and rules. ARP 3.25

C. It is also consistent with United States Supreme Court precedent and well-established legal principles that have developed under Title IX, as well as under the related anti-discrimination provisions of Title VI and Title VII of the Civil Rights Act of 1964[2].

D. In order to give rise to a complaint under Title IX, sexual harassment must be sufficiently severe, persistent, or pervasive that it adversely affects a student's education or creates a hostile or abusive educational environment. For a one-time incident to rise to the level of harassment, it must be severe.

E. Title IX applies to all public and private educational institutions that receive Federal funds, including elementary and secondary schools, school districts, proprietary schools, colleges, and universities.

---

[1] Title IX was modeled on Title VI, Cannon v. University of Chicago, 441 U.S. 677, 694 (1979)

[2] See Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992)(applying Title VII principles in determining that a student was entitled to protection from sexual harassment by a teacher in school under Title IX); Kinman v. Omaha Public School Dist., 94 F.3d 463, 469 (8th Cir. 1996) (applying Title VII principles in determining that a student was entitled to protection from hostile environment sexual harassment by a teacher in school under Title IX); Doe v. Claiborne County, 1996 WL 734583, *19 (6th Cir. December 26, 1996) (holding in a case involving allegations of hostile environment sexual harassment of a student by a teacher that Title VII agency principles apply to sexual harassment cases brought under Title IX);

F.  Title IX protects any "person" from sex discrimination; accordingly both male and female students are protected from sexual harassment engaged in by a school's employees, other students, or third parties.

G.  No employee or student, neither in the workplace or in the academic environment, should be subjected to discrimination. Even one incident of misconduct may constitute a violation of policy, rule or procedure.  NMSU expects students, faculty and staff to treat one another and campus visitors with respect.

   Whether an action is discriminatory under law and/or policy will be determined based on the specific facts of each case and the context under which the conduct occurred.

   1.  Some conduct may be inappropriate, unprofessional, and/or subject to disciplinary action, but not fall under the definition of discrimination/sexual harassment/sexual misconduct.

   2.  Action taken will depend on the nature and seriousness of the conduct alleged and proven.  ARP 3.25 Sections H & I

H.  In order to be actionable as harassment, sexual conduct must be unwelcome. Conduct is unwelcome if the student did not request or invite it and "regarded the conduct as undesirable or offensive[36]." Acquiescence in the conduct or the failure to complain does not always mean that the conduct was welcome.

I.  In considering whether an action is unwelcome the nature of the conduct and the relationship of the school employee to the student, including the degree of influence (which could, at least in part, be affected by the student's age),

authority, or control the employee has over the student are parts of the overall review[3].

J.  Title IX and the regulations implementing it prohibit discrimination "on the basis of sex;" they do not restrict sexual harassment to those circumstances in which the harasser only harasses members of the opposite sex in incidents involving either quid pro quo or hostile environment sexual harassment. In order for hostile environment harassment to be actionable under Title IX, it must create a hostile or abusive environment. This can occur when a student or employee harasses a member of the same sex. See, Kinman, 94 F.3d at 468 (female student's alleging sexual harassment by female teacher sufficient to raise a claim under Title IX).

K.  To determine if conduct qualifies as "sexual harassment" there are a number of factors that an institution may consider. The elements of severity, pervasiveness, and objective offensiveness must be evaluated in light of the known circumstances and depend on the facts of each situation, but must be determined from the perspective of a ***reasonable person*** standing in the shoes of the complainant.

---

[3] Patricia H., 830 F.Supp. at 1297 ("grave disparity in age and power" between teacher and student contributed to the creation of a hostile environment); Summerfield Schools, OCR Case No. 15-92-1929 ("impact of the ... remarks was heightened by the fact that the coach is an adult in a position of authority"); cf. Doe v. Taylor I.S.D., 15 F.3d 443 (5th Cir. 1994), cert. denied, 115 S.Ct. 70 (1994) (Sec. 1983 case; in finding that a sexual relationship between a high school teacher and a student was unlawful, court considered the influence that the teacher had over the student by virtue of his position of authority).

L.  Sexual harassment under Title IX defines unwelcome conduct as conduct that is so severe, pervasive, and objectively offensive that it denies a person equal educational opportunity is actionable sexual harassment regardless of the respondent's intent to cause harm.

M.  Severity and pervasiveness are necessary elements to ensure that Title IX's nondiscrimination mandate does not punish verbal conduct in a manner that chills and restricts speech and academic freedom.

N.  The actions of Dr. Roemer are sufficiently severe, pervasive and objectively offensive that a reasonable person standing in the shoes of the Complainants would find his actions to be not only harassing but discriminatory and not appropriate in any educational setting.

**Sanctions to be imposed on Respondent**

It is the recommendation of this hearing officer that Dr. Roemer be sanctioned for his actions including but not limited to termination of employment with the University. His behavior is not to be tolerated in an educational setting and despite his intentions it has served to adversely affect the education of the complaints.


CUDDY & MCCARTHY, LLP

By: */S/ Jacquelyn Archuleta-Staehlin*
    Jacquelyn Archuleta-Staehlin
    Cuddy & McCarthy, LLP
    Post Office Box 4160
    Santa Fe, New Mexico 87502
    JStaehlin@cuddymccarthy.com
    *Independent Hearing Officer*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was sent this 31st

day of August, 2021, via electronic means to the following individual:

**Laura M. Castille, esq.**
**Executive Director, Title IX Coordinator, ADA & AA**
**Office of Institutional Equity**
MSC 3515
New Mexico State University
P.O. Box 30001
Las Cruces, NM 88003-8001
castille@nmsu.edu

*/S/ Jacquelyn Archuleta-Staehlin*
Jacquelyn Archuleta-Staehlin